[Civ. No. 18152.   Second Dist., Div. One.   Mar. 12, 1951.]

Estate of HELEN M. ZAEPFEL, Deceased.   SYLVIA
   JONES, Appellant, v. SECURITY FIRST NATIONAL
   BANK, as Executor, etc., et al., Respondents.

Bailey & Poe and Rufus Bailey for Appellant.

Hanna & Morton and John H. Blake for Respondents.

DORAN, J.—From the stipulation as to facts it appears
that petitioner Sylvia Jones was born April 13, 1913, at
Norwalk, Connecticut; that thereafter petitioner's father and

mother were divorced and the father married the decedent who on May 20, 1920, adopted petitioner under the laws of Connecticut. Petitioner's father, with petitioner and the decedent, then moved to the State of New York where on June 13, 1925, the petitioner's grandmother, Agnes L. Russell, adopted petitioner under the laws of New York. Clarence L. Jones, petitioner's father, died in Syracuse, New York on February 28, 1932; the decedent Helen M. Jones (Zaepfel), widow of petitioner's father, then moved to Los Angeles, California, remarried, and died there on November 10, 1948. The will of Helen M. Zaepfel, duly probated, left the entire estate to the Roman Catholic Church of St. Helen, and recited: "I declare that I am a widow; that I have no children; that I have no brothers, sisters, nephews, nieces, descendants or ancestors now living."

The trial court found "That the petitioner, Sylvia Jones, is neither a spouse, brother, sister, nephew, niece, descendant nor ancestor who, under the Will or the laws of succession, is entitled to take the property bequeathed or devised in said Will"; that the gift to the Roman Catholic Church of St. Helen, is valid and that such beneficiary is entitled to succeed to the entire estate.

"It is the position of appellant, both by the weight of authority and reason, that her adoption in the State of New York did not deprive her of the right to inherit from her prior adoptive parent, namely the decedent herein." Appellant notes in this connection that both under the laws of Connecticut where the adoption by decedent occurred, and in California, under section 257 of the Probate Code, an adopted child inherits from its adoptive parents. Section 115 of the Domestic Relations Law of New York provides that "the rights of a foster child to inheritance and succession from his natural parents remain unaffected by adoption," from which it is argued that the second adoption (in New York) did not deprive the child's right to inherit from the previous adoptive parent, namely the decedent.

Respondent's position is that "Appellant, who is now the adopted child of a stranger to decedent but who was once an adopted child of the decedent, is not a person entitled, under the laws of California, to succeed to decedent's property. She is neither spouse, brother, sister, nephew, niece, descendant nor ancestor of the decedent and is therefore outside the application of Section 41 of the Probate Code."

The question here presented is apparently one of first impression in this state. Nor has appellant presented any decision of any other state dealing with the exact situation here involved. As hereinafter pointed out, the cases relied upon by appellant rest upon certain propositions clearly untenable in the instant controversy, or upon facts easily distinguishable. Annotations in 73 A.L.R. 964 and 154 A.L.R. 1179 dealing with "Conflict of laws as to adoption as affecting descent and distribution of decedent's estate," indicate a divergence of opinion in reference to such conflict but do not determine the precise question now before the court.

*Estate of Tibbetts*, 48 Cal.App.2d 177 [119 P.2d 368], cited by appellant, merely holds, in the language of the headnote, that "An adopted child is a lineal descendant of an adopting parent within the meaning of the anti-lapse section of the Probate Code (§ 92), and is entitled to inherit on the death of its parent prior to the death of a testator where its parent is kindred of the testator and a legatee under his will"; and that the anti-lapse statute applied "irrespective of the existence or terms of a similar statute in the state in which an adopted child claiming the right to inherit under the will resides and was adopted. The adoption statute of such state is material only for the purpose of determining whether such child attained the status of a 'lineal descendant' of the testator by virtue of the adoption."

Although the *status* of an alleged adopted child is to be determined by the laws of the state where the adoption was effected, the rules of inheritance are determined by the laws of the state where real estate is situated, or in the case of personal property where the decedent was domiciled. (See *Estate of Grace*, 88 Cal.App.2d 956 [200 P.2d 189].) In the instant case, the laws governing inheritance are those of California where the decedent was domiciled and died.

The provision contained in section 115 of the New York Domestic Relations Law that "the rights of a foster child to inheritance and succession from his natural parents remains unaffected by adoption," relied upon by appellant, can furnish no support for the present contentions either directly or by analogy. The decedent was, of course, not a natural parent of appellant but merely a stepmother unrelated in blood. Moreover to give any force to such New York statute or cases based on similar statutes, or to draw any analogy therefrom, would be to totally ignore the express provisions of section 257 of the California Probate

Code which provides that "An adopted child *does not* succeed to the estate of a natural parent when the relationship between them has been severed by the adoption." (Italics added.) If the New York adoption did anything, it certainly "severed" the previous adoptive relation with decedent.

Appellant has cited *In re Sutton's Estate,* 161 Minn. 426 [201 N.W. 925], and *Patterson* v. *Browning,* 146 Ind. 160 [44 N.E. 993], holding, in the language of the Sutton case, that since an adoption did not take away the right of a child to inherit from its natural parents (not the law in California), there was "no more reason why a second adoption should take away the right of inheritance conferred by the first adoption." It must be noted that these and other similar cases were decided upon one of two theories. Either the law in the state of adoption permitted an adopted child to inherit from its natural parents; or the second adoption took place after the death of the first adoptive parent and when the child's right to inherit had already vested. Neither of these situations is here present.

Obviously, an entirely different situation would be presented had the second adoption in New York not taken place. But as hereinbefore indicated, the obvious purpose and effect of such second adoption could only have been to substitute the newly created status whereby appellant's grandmother became the guardian, for the previous adoptive parental role which the decedent occupied. That the decedent so understood the matter is made clear by the will statement, "I have no children; . . . no descendants or ancestors now living." Having once thus severed the original adoptive relation between appellant and decedent, it seems neither good law nor good reason to now attempt to restore that relation for the purpose of enabling appellant to inherit from one not otherwise related.

An example of the rule that a foreign law in reference to adoption will be given effect in California in determining adoptive "status" is found in *Estate of Morris,* 56 Cal.App. 2d 715 [133 P.2d 452], where a Rhode Island statute permitted adoption of one adult by another although no such procedure is authorized under California law. The Morris case involved a liberal interpretation of the California inheritance tax law, and was in no manner similar to the present controversy. As hereinbefore mentioned, while the "status" may be determined by foreign law, the rules of inheritance are to be determined by the local law.

■ The trial court's finding, therefore, that the appellant, once an adopted child of the decedent but in no other way related, and later adopted in another state by a grandmother, was at the time of the decedent's death, "neither a spouse, brother, sister, nephew, niece, descendant nor ancestor who, under the will or the laws of succession, is entitled to take the property bequeathed or devised in said Will," must be sustained. Appellant's briefs have presented no persuasive reason and no authority for appellate interference with that ruling.

The order appealed from is affirmed.

White, P. J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 10, 1951. Edmonds, J., and Schauer, J., voted for a hearing.